UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CRAIG SILMAN,

                              Plaintiff,

           v.                                          6:14-CV-0432
                                                                (LEK/TWD)

UTICA COLLEGE, TYSON KRIEGER,
JOHN JOHNSON, ALANE VARGA,
STEVE PATTARINI, JUDITH KIRKPATRICK,
TODD HUTTON, LAWRENCE GILROY,
DOES 1-100,

                              Defendants.
_____

APPEARANCES

CRAIG SILMAN
Plaintiff pro se
1013 Hope Street
Utica, NY 13502

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

      Presently before the Court is a pro se complaint and application to proceed *in forma pauperis* filed by Plaintiff Craig Silman. (Dkt. Nos. 1-2.) Plaintiff alleges that Defendants, who are all affiliated with Utica College, discriminated against him by failing to reasonably accommodate his disability and then retaliated against him by administratively withdrawing him from campus. (Dkt. No. 1.) For the reasons discussed below, I recommend that the Court dismiss Claim III as to the individual defendants without leave to amend, dismiss the claims for intentional and negligent infliction of emotional distress against all parties with leave to amend, and direct the United States Marshal to serve the complaint on Defendant Utica College so that it may respond to the Rehabilitation Act claims against it.

I.     **APPLICATION TO PROCEED *IN FORMA PAUPERIS***

      Plaintiff has applied to proceed *in forma pauperis*. (Dkt. No. 2.) A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. §

1915(a)(1) (2006). After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 2), I find that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[1]

## II. SCREENING OF THE COMPLAINT

### A. Applicable Legal Standard

28 U.S.C. § 1915(e) (2006) directs that when "any person" proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) (2006).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d

---

[1] Plaintiff should note that although the application to proceed *in forma pauperis* has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

-2-

133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When screening a complaint, the court has the duty to show liberality towards pro se litigants. *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

### B. Allegations of the Complaint

Plaintiff alleges that he is a "qualified person with a disability." (Dkt. No. 1 ¶ 12.) On October 30, 2013, he received a doctor's note excusing him from five days of classes at Utica College so that he could rest his shoulder. *Id*. ¶ 15. Plaintiff provided the college with a copy of the note. *Id*.

On November 3, 2013, Plaintiff sent an email to his instructors requesting additional time to take tests and turn in assignments. *Id*. ¶ 16. All of Plaintiff's instructors except for Defendant Tyson Krieger granted Plaintiff's requests. *Id*. ¶ 17.

On November 4, 2013, Plaintiff met with Defendant Krieger and the college's Director of Learning Services to discuss Plaintiff's request for accommodations. *Id*. ¶ 18. Plaintiff requested an additional three days to take a test and five additional days to turn in a written assignment. *Id*. ¶ 19. Defendant Krieger told Plaintiff that his "service connected physical disability was no different than a student who had the flu or had phantom computer problems the night before an assignment was due."

*Id*. ¶ 20. Defendant Krieger denied Plaintiff's request for accommodation. *Id*. ¶ 19.

On November 6, 2013, Plaintiff filed a complaint with the Department of Education, Office of Civil Rights. *Id*. ¶ 21. On November 13, 2013, Plaintiff was informed by telephone that his request for early mediation was granted. *Id*. ¶ 22. Upon receiving that information, Plaintiff contacted Defendant Steve Pattarini, the Vice President of Student Affairs at Utica College, regarding the status of the paper that was due for Defendant Krieger's class. *Id*. ¶¶ 8, 23. Defendant Pattarini told Plaintiff to discuss the matter with Defendant Krieger. *Id*. ¶ 23. Plaintiff asked Defendant Krieger what the "new due date" was for his paper. *Id*. ¶ 24. Defendant Krieger indicated that he did not have time to tell Plaintiff because he was on his way to a meeting. *Id*. Plaintiff "insisted" that Defendant Krieger tell him. *Id*.

On November 13, 2013, Utica Public Safety informed Plaintiff that he was to have no contact with Defendant Krieger. *Id*. ¶ 25. Plaintiff was removed from class. *Id*. On November 19, 2013, Defendant Alane Varga, the Dean of Students at Utica College, met with Plaintiff and told him that his conduct toward Defendant Krieger was being investigated. *Id*. ¶¶ 7, 26. Defendant Varga told Plaintiff that he could not go to class, but that he would be allowed back into class once the investigation was complete. *Id*. ¶ 26.

On December 17, 2013, Plaintiff learned that "he received a grade much lower tha[n] had been reported as part of the mid-term grades." *Id*. ¶ 27. That same day, Plaintiff "demanded to know the results of the investigation." *Id*. ¶ 28. That same day, Defendant Varga sent Plaintiff a letter stating that Plaintiff would be charged with misconduct under the Utica College Code of Student Conduct. *Id*. ¶ 30.

On December 19, 2013, Plaintiff informed Defendant Varga that he would retake the class in question. *Id*. ¶ 32. Sometime between December 19 and 23, 2013, Defendant John Johnson, the Dean

of Arts and Sciences at Utica College, told Plaintiff that he would not be allowed to retake the class with Defendant Krieger. *Id*. ¶¶ 6, 33.

On December 23, 2013, Defendant Johnson told Plaintiff that his grade would be "administratively changed to a P so that it would have a neutral effect on his admission to the Utica College Nursing Program." *Id*. ¶ 34.

On December 23, 2013, Plaintiff emailed Defendant Johnson. *Id*. ¶ 35. Plaintiff objected to not being allowed to take the course in question with Defendant Krieger. *Id*. Plaintiff indicated that Defendant Krieger "had made bigoted remarks to him." *Id*. He stated that he would take legal action if he was not allowed to retake the course in question with Defendant Krieger. *Id*. On December 25, 2013, Plaintiff sent Defendant Johnson another email. *Id*. ¶ 36. Plaintiff stated that he had been discriminated against and retaliated against because he filed a complaint with the Office of Civil Rights. *Id*. Plaintiff reiterated that he would take legal action if he was not allowed to retake the course with Defendant Krieger. *Id*.

On January 7, 2014, Defendant Johnson sent Plaintiff an email indicating that Plaintiff had been barred from registering for Defendant Krieger's class. *Id*. ¶ 37. Plaintiff replied by email, requesting the contact information for Utica College's legal counsel so that he could file a request for preliminary injunction against Utica College. *Id*. ¶ 38.

On April 3, 2013, Plaintiff met with non-defendant Catherine Brownell to discuss admission to the Utica College Nursing Program. *Id*. ¶ 39. Brownell informed Plaintiff that the grade of P that he received in Defendant Krieger's class would be counted as a C in calculating Plaintiff's transfer grades. *Id*. Plaintiff's grade in Defendant Krieger's course had been a C+ before it was administratively changed to a P. *Id*. Brownell told Plaintiff that, even with the C, "he was still extremely competitive in

-5-

regards to admission." *Id*. ¶ 40.

On April 3, 2014, Plaintiff told Defendant Johnson that, contrary to his representations, the P grade in the course was going to be counted as a C. *Id*. ¶ 41. Defendant Johnson replied by email that the P grade would not jeopardize Plaintiff's admission to the nursing program and that Plaintiff was academically competitive. *Id*. ¶ 42. Plaintiff replied by email, asking if the P grade would be counted as a C for determining admission. *Id*. ¶ 43. Defendant Johnson replied that he did not know if the P grade would be used to determine Plaintiff's transfer GPA, but that Plaintiff was academically competitive. *Id*.

On April 4, 2014, at 5:47 a.m., Plaintiff sent Defendant Johnson a "scathing email" in which he "indicat[ed] his displeasure" with Defendant Johnson and how he "had been treated by Utica College." *Id*. ¶ 44. Plaintiff stated that he was going to demand an investigation into how he had been treated. *Id*. He stated that if no investigation was conducted, he would "take his complaint to the Trustees of the Utica College and the press about the bigoted comments made toward" him and the way he had been treated. *Id*.

About six hours later, Plaintiff was "intercepted" by Utica College Public Safety officers and escorted to the Public Safety Office. *Id*. ¶ 45. Members of the Utica College Police Department were also present. *Id*. Plaintiff was given a letter indicating that he had been administratively withdrawn from campus and that the VA had been refunded the tuition it paid on his behalf for the semester. *Id*.

Plaintiff filed this lawsuit on April 16, 2014. (Dkt. No. 1.) Plaintiff names Utica College, Defendant Krieger, Defendant Johnson, Defendant Varga, Defendant Pattarini, Judith Kirkpatrick (the Provost of Utica College), Todd Hutton (the President of Utica College), and Lawrence Gilroy (the Chairperson of the Utica College Board of Trustees) as defendants. *Id*. ¶¶ 4-11. Plaintiff alleges that

Defendant Utica College violated the Rehabilitation Act, 29 U.S.C. § 749(a). *Id*. ¶¶ 46-48. Specifically, Plaintiff alleges that Utica College failed to engage in the interactive process by allowing Defendant Krieger, rather than the Disability Services Officer, to make the decision about Plaintiff's accommodation request. *Id*. ¶ 47. Plaintiff further alleges that Utica College violated the Rehabilitation Act by failing to accommodate his reasonable accommodation request. *Id*. ¶ 50. He alleges that all of the named defendants violated the Rehabilitation Act by retaliating against him for filing a claim with the Office of Civil Rights and for threatening further legal action. *Id*. ¶ 53. Finally, Plaintiff claims that all of the named defendants committed the state torts of intentional infliction of emotional distress and negligent infliction of emotional distress. *Id*. ¶¶ 55-63. Plaintiff requests reinstatement to Utica College, admission to the Utica College Nursing Program, $1.5 million in compensatory damages, punitive damages, and injunctive relief preventing Defendants from discriminating against him. *Id*. at 10.

**C.    Analysis**

For the reasons discussed below, it is recommended that the Court dismiss Claim III as to the individual Defendants without leave to amend and the claims for intentional and negligent infliction of emotional distress against all Defendants without leave to amend.

1. Rehabilitation Act Claims Against Individual Defendants

Plaintiff asserts three claims under the Rehabilitation Act, 29 U.S.C. § 794(a). (Dkt. No. 1 ¶¶ 46-54.) Plaintiff names individual defendants in the third of these claims, which alleges that Defendants retaliated against him because he filed a claim with the Office of Civil Rights and stated that he would engage in further legal action. *Id*. ¶ 53. However, there is no individual liability, other than official-capacity individual liability in lawsuits involving government institutions, for retaliation

claims under the Rehabilitation Act. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 288 (2d Cir. 2003); *Diggs v. Town of Manchester*, 303 F. Supp. 2d 163, 175 (D. Conn. 2004). Therefore, it is recommended that the Court dismiss Plaintiff's Claim III against Defendants Krieger, Johnson, Varga, Kirkpatrick, Pattarini, Hutton, and Gilroy.

Where a pro se complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id*. (citation omitted). Here, the problem with Plaintiff's Claim III against the individual defendants could not be cured through better pleading. Therefore, it is recommended that the Court dismiss Claim III against the individual defendants without leave to amend.

2. <u>Intentional Infliction of Emotional Distress</u>

Plaintiff claims that Defendants committed the tort of intentional infliction of emotional distress. (Dkt. No. 1 ¶¶ 60-63.) A claim of intentional infliction of emotional distress under New York law has four elements: (1) extreme and outrageous conduct; (2) the intentional or reckless nature of such conduct; (3) a causal relationship between the conduct and the resulting injury; and (4) severe emotional distress. *Carlson v. Geneva City School Dist.*, 679 F. Supp. 2d 355, 372 (W.D.N.Y. 2010). "Extreme and outrageous conduct" is very narrowly defined under New York law. For example, falsely accusing a nurse of euthanizing a patient has been held insufficiently "extreme and outrageous" to support a claim for intentional infliction of emotional distress. *Id*. Harassing an employee and conducting an investigation into whether she had sex with students and sold them drugs has also been

-8-

held insufficiently "extreme and outrageous." *Id*. Even taken in the light most favorable to Plaintiff, the facts here do not plausibly suggest the type of conduct considered "extreme and outrageous" under New York law. Therefore, it is recommended that the Court dismiss Plaintiff's intentional of emotional distress claim with leave to amend.

### 3. Negligent Infliction of Emotional Distress

Plaintiff asserts a claim against all Defendants for negligent infliction of emotional distress. (Dkt. No. 1 ¶¶ 60-63.) A claim of negligent infliction of emotional distress under New York law has four elements: (1) breach of a duty owed to the plaintiff, which breach either unreasonably endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her physical safety; (2) extreme and outrageous conduct; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *Shearon v. Comfort Tech Mechanical Co.*, 936 F. Supp. 2d 143, 156 (E.D.N.Y. 2013). Here, there are no facts in the complaint that plausibly suggest that Defendants' conduct endangered Plaintiff's physical safety or caused him to fear for his physical safety. Further, as discussed above, there is no allegation of facts severe enough to be considered "extreme and outrageous" conduct under New York law. Therefore, it is recommended that the Court dismiss Plaintiff's negligent infliction of emotional distress claim with leave to amend.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2 ) is **GRANTED**; and it is further

**RECOMMENDED** that the Court dismiss Claim III against Tyson Krieger, John Johnson, Alane Varga, Steve Pattarini, Judith Kirkpatrick, Todd Hutton, and Lawrence Gilroy without leave to amend; and it is further

**RECOMMENDED** that the Court dismiss the claim for intentional infliction of emotional distress against all Defendants with leave to amend; and it is further

**RECOMMENDED** that the Court dismiss the claim for negligent infliction of emotional distress against all Defendants with leave to amend; and it is further

**RECOMMENDED** that if the Court adopts this Report-Recommendation, the Clerk issue a summons and forward it, along with a copy of the complaint and a packet containing General Order 25, which sets forth the Civil Case Management Plan used by the Northern District of New York, to the United States Marshal for service upon Defendant Utica College; and it is further

**RECOMMENDED** that a formal response to Plaintiff's Claims I-III be filed by Defendant Utica College as provided for in the Federal Rules of Civil Procedure subsequent to service of process on Defendant; and it is further

**ORDERED** that any paper sent by a party to the Court or the Clerk shall be accompanied by a certificate setting forth the date a true and correct copy of it was mailed to all opposing parties or their counsel. **Any letter or other document received by the Clerk or the Court which does not include a certificate of service which clearly states that an identical copy was served upon all opposing parties or their attorneys is to be returned, without processing, by the Clerk.** Plaintiff shall also comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All motions shall comply with the Local Rules of Practice of the Northern District; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72.

Dated: April 30, 2014
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge