UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CRAIG SILMAN,

                            Plaintiff,

        -against-                                    6:14-cv-0432 (LEK/TWD)

UTICA COLLEGE,

                            Defendant.

_____

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Pro se Plaintiff Craig Silman commenced the present action against Defendant Utica College ("the College") on April 16, 2014, after being dismissed as a student from the College. Dkt. No. 1 ("Complaint"). Plaintiff's Complaint alleged discrimination, failure to engage in the interactive process, and retaliation for engaging in a protected activity in violation of 29 U.S.C. § 794(a); negligent infliction of emotional distress; and intentional infliction of emotional distress. Complaint. Plaintiff filed an Amended Complaint requesting injunctive relief and compensatory damages on February 27, 2015, which was accepted by the court as the operative complaint on March 2, 2015. Dkt. Nos. 65-1 ("Amended Complaint"), 67 ("March Order"). Presently before the Court is Defendant's Motion for Summary Judgment. Dkt. No. 97 ("Motion"). Plaintiff filed a Response in Opposition on April 20, 2016, and Defendant filed a Reply on April 29, 2016. Dkt. Nos. 104 ("Opposition"), 107 ("Reply"). For the following reasons, Defendant's Motion is granted.

## II.    BACKGROUND

### A. Plaintiff's History at Utica College

Plaintiff was enrolled as a student at Utica College beginning in the summer of 2013. Dkt. No. 97-1 ("Defendant's Statement of Material Facts") ¶ 6.[1] Prior to the 2013–14 academic year, Plaintiff requested classroom accommodations through the College's Academic Support Services Center. Id. ¶ 7. Plaintiff submitted documentation from the United States Department of Veterans Affairs (the "VA") in support of his disability. Id. This documentation indicated that Plaintiff had been diagnosed with Reflex Sympathetic Dystrophy ("RSD") of the right shoulder with a "10 percent" disability rating, among other conditions. Id. Plaintiff was then provided with the "following accommodations: 1) use of a tape recorder in the classroom; 2) notetaker in the classroom; and 3) preferential seating in the classroom for optimal auditory and visual cues." Id. ¶ 8. Utica College's Learning Services Handbook explains that students "are responsible for sharing their accommodation letters with the professors and communicating with their professors about their disabilities." Id. ¶ 9.

---

[1] The Court notes that Plaintiff violated New York Local Rule 7.1(a)(3) by failing to respond to Defendant's Statement of Material Facts. L.R. 7.1(a)(3) ("The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."). Plaintiff has practiced as an attorney, and "where 'a particular *pro se* litigant is familiar with the procedural setting as a result of prior experience such that it is appropriate to charge [him] with knowledge of . . . particular requirements, it falls well within a district court's discretion to lessen the solicitude that would normally be afforded.'" Koziol v. King, No. 14-CV-946, 2015 WL 2453481, at *4 (N.D.N.Y. 2015) (quoting Tracy v. Freshwater, 623 F.3d 90, 102 (2d Cir. 2010)). However, a court has broad discretion to ignore local rules. Ass'n for Retarded Citizens of Conn. v. Thorne, 68 F.3d 547, 553 (2d Cir. 1995) (quoting Somlyo v J. Lu-Rob Enterprises, Inc., 932 F.2d 1043, 1048 (2d Cir. 1991)). The Court, mindful of Plaintiff's pro se status as well as his background, will consider the facts referenced in Plaintiff's papers accordingly.

Plaintiff was enrolled in Dr. Tyson Krieger's Psychology 322 class during the Fall 2013 semester. Id. ¶ 10. On Monday September 3, 2013, Plaintiff refused to speak to Krieger after a class that Plaintiff had arrived late to. Id. ¶ 11. Plaintiff sent Krieger an email, stating "[b]y leaving I was hoping to avoid what was more likely to be an unpleasant situation for both of us." Id. Krieger responded to Plaintiff's email, encouraging Plaintiff to make use of the "many resources available . . . here" and suggesting that Plaintiff contact the Dean for Student Success, Steve Pattarini. Id. ¶ 12.

Plaintiff was absent from classes between October 30 and November 4, 2013, due to a flare-up of his shoulder condition. Id. ¶ 13. Plaintiff submitted a note from Utica College Health Center that excused him from class. Id. ¶ 15. Plaintiff then informed his professors that due to his absence he would require extensions of deadlines for assignments and exams. Id. ¶ 16–17. One of Plaintiff's proposed extensions was that Krieger extend a deadline for a paper from November 14 to November 19. Id. ¶ 16. Krieger refused to extend the deadline for the paper, though he did offer to excuse Plaintiff from an exam scheduled for November 5. Id. ¶ 17.

On November 4, 2013, Plaintiff met with the Director of Learning Services, Kateri Henkel, and Krieger to discuss Plaintiff's extension request. Id. ¶ 18. Krieger did not extend the deadline for the paper because Plaintiff had known about the paper since the beginning of the semester and because it was not due for another ten days. Id. ¶ 19. After this meeting, Plaintiff stopped attending Krieger's class. Id. ¶ 20. On November 12, 2013, Krieger extended the deadline of the paper to November 18, 2013, for all students in the class. Id. ¶ 25.

On November 6, 2013, Krieger sent an email to some of the administrators of the College, stating that he was unsure of how to handle Plaintiff's behavior. Id. ¶ 21. In this email,

Krieger wrote that "after reflecting on [Plaintiff's] behaviors" at the November 4 meeting, he "no longer [felt] comfortable" with Plaintiff in his class. Id. ¶ 22. In response to Krieger's email, the College arranged for a security officer to be in the vicinity of Krieger's class. Id. ¶ 23.

Plaintiff filed a complaint with the Department of Education, Office of Civil Rights ("OCR") on November 6, 2013, requesting mediation through OCR's Early Complaint Resolution ("ECR"). Id. ¶ 24.

On November 13, 2013, after an encounter with Plaintiff near Krieger's office, Krieger filed a complaint with the Office of Campus Safety. Id. ¶ 26. In his complaint, Krieger wrote about the "very heated" meeting with Henkel as well as the encounter that had occurred that day. Id. Krieger wrote that Plaintiff loudly demanded to know the date on which his paper was due, and that he felt "extremely threatened by [Plaintiff's] behaviors." Dkt. No. 16-3 ("Krieger Declaration") at 33–34. Krieger wrote that he had "felt threatened by [Plaintiff] on previous occasions in which [he had] documented in emails to Academic Services." Id. at 34. Plaintiff sent an email to Henkel on November 14, 2013, in which he admitted to talking in an "aggressive manner" in his interactions with Krieger and Dean Steve Pattarini the day before. Def.'s SMF ¶ 27.

On November 13, 2013, the College issued Plaintiff a Notice of Interim Ban, barring Plaintiff from attending Krieger's Psychology class. Id. ¶ 28. Alane Varga, Dean of Students at Utica College, met with Plaintiff on November 19, 2013, to discuss the interim ban and to determine whether or not to charge him with violating the Student Code of Conduct. Id. ¶ 30.

The College participated in the ECR process in November. Id. ¶ 31. During this mediation, Plaintiff agreed not to attend Krieger's class for the remainder of the semester. Id.

Plaintiff also agreed to provide additional documentation of his disabilities for Henkel to review and evaluate. Id. The College agreed to provide audio recordings of Krieger's Psychology class for Plaintiff and that Plaintiff would not be penalized for his late electronic submission of the paper due on or around November 18, 2013. Id. ¶¶ 31–32; Dkt. No. 16-1 ("Hutton Declaration") at 9. Plaintiff and the General Counsel of Utica College signed the resolution, agreeing that it "resolve[d] the allegation filed in [Plaintiff's] OCR complaint." Hutton Decl. at 9; Def.'s SMF ¶¶ 32–33.

On December 17, 2013, Varga sent a letter to Plaintiff explaining that she would "not be charging [him] with violations of the Code of Student Conduct in regards to [his] interactions with Dr. Tyson Krieger." Dkt. No. 16-5 ("Varga Declaration") at 23; Def.'s SMF ¶ 34. Varga notified Plaintiff that "the restriction on contact with Dr. Krieger" was to remain in place. Def.'s SMF ¶ 34.

Plaintiff received a C+ in Krieger's Psychology course, and on December 19, 2013, he requested permission from the Dean of Arts and Sciences, John Johnsen, to retake the Psychology course in the spring of 2014. Id. ¶¶ 35–36. Johnsen denied Plaintiff's request as Krieger was the only professor scheduled to teach that class. Id. ¶ 37. Johnsen agreed to change Plaintiff's grade from a C+ to a P because he believed it would "neutralize the impact of the grade on Plaintiff's College grade point average" for his nursing school application, as Plaintiff was very worried that the C+ would "jeopardize his chances of transferring to the College's Nursing program." Def.'s SMF ¶ 38; Dkt. No. 16-2 ("Johnsen Declaration") ¶¶ 6–7. Later that day, Plaintiff emailed Johnsen, explaining why he wanted to retake the class and why he had "a problem" with Krieger. Def.'s SMF ¶ 39; Johnsen Decl. at 11.

Johnsen sent an email to Plaintiff on December 23, 2013, stating again that he would not permit Plaintiff to retake Krieger's class, but that he would administratively change Plaintiff's grade from a C+ to a P. Def.'s SMF ¶ 40. In his email to Plaintiff, Johnsen explained that he verified with the program chair of the nursing program that a P would not have a negative impact on the program's admission decision. Id.

Plaintiff re-enrolled himself in Krieger's psychology class for the Spring 2014 semester, despite Johnsen's correspondence. Johnsen Decl. ¶ 12. Johnsen met with Pattarini, General Counsel DeSocio, Varga, and Henkel to discuss their concerns with Plaintiff's behavior. Def.'s SMF ¶ 42; Johnsen Decl. ¶ 12. Plaintiff eventually accepted Johnsen's offer to change his grade for Krieger's class from the C+ to a P. Id. ¶ 43.

During the Spring 2014 semester, Plaintiff submitted an online response in a class that he was taking with Professor Mary T. Siniscarco, in which he wrote about his love of shooting. Id. ¶ 44; Dkt. No. 16-4 ("Siniscarco Declaration") at 14. Plaintiff then wore a shirt to class that depicted a bullet wound on his torso. Def.'s SMF ¶ 45.

On April 1, 2014, there was an encounter between Plaintiff, Krieger, and Dr. Steven Specht, where Plaintiff got within inches of Krieger's face and stared "menacingly." Id. ¶ 46; Krieger Decl. at 37. Krieger and Specht filed complaints with Campus Safety after that encounter. Def.'s SMF ¶ 46. Plaintiff also filled out a report form with Campus Safety after the incident, where he admitted having a "scowling look on [his] face." Dkt. No. 31-1 ("Reply Declaration") at 8.

After conferring with Specht about the April 1 incident, President Hutton directed Wayne Sullivan, the Director of Campus Safety, to contact the Utica Police Department and the FBI to

obtain a threat assessment of Plaintiff. Def.'s SMF ¶ 48. The FBI referred the threat assessment request to FBI headquarters in Quantico, Virginia. Id. ¶ 49.

On April 3, 2014, Plaintiff confronted Johnsen in the hall, upset about the P on his transcript. Id. ¶ 50; Johnsen Decl. ¶ 18. Johnsen reported this encounter to Campus Security. Id. ¶ 51. That same day, Plaintiff sent a message to Professor Siniscarco's online class in which he accused the other students in the class of "wasting [his] time" and "half assing" their work. Id. ¶ 52; Dkt. 97-5 ("Supplemental Siniscarco Declaration") ¶¶ 3–4. Later that day, Plaintiff sent another message to the entire online class, criticizing their work habits and telling them to "change your work habbits [sic] now." Def.'s SMF ¶ 53 (alteration in original); Suppl. Siniscarco Decl. ¶ 6. A student emailed Professor Siniscarco regarding the online messages Plaintiff had posted, as the student and other classmates found them offensive. Def.'s SMF ¶ 54. Siniscarco sent an email to the College's administration regarding Plaintiff's online postings and the student complaint. Id.

Plaintiff sent an email to Johnsen on April 4, 2014, accusing him of "incompetence, laziness, or both," and stating that he would "make sure that [Plaintiff is] the last student [Dean Johnsen] treat[s] in this manner." Id. ¶ 56 (alterations in original).

Later on the morning of April 4, 2014, Hutton called an emergency meeting of the College's Crisis Management Team (the "Team"). Id. ¶ 57. The meeting was to determine whether Plaintiff posed an immediate threat to the college. Id.; Johnsen Decl. ¶ 21. Attendees of the meeting included: Executive Vice President and Chief Advancement Officer Laura Casamento, Provost and Vice President of Academic Affairs Judith Kirkpatrick, General Counsel Walter DeSocio, Vice President of Financial Affairs Tammy Raub, Dean Varga, Director of

Campus Safety Wayne Sullivan, Dean Johnsen, Vice President Dale Scalise-Smith, Senior

Assistant to the President Kim Lambert, Professor James Brown, and Vice President Pattarini (by

phone). Id. ¶ 58. The Team also invited Professor Larry Arronson, Professor Siniscarco, and

Professor Specht to attend the meeting. Id. The Team found that Plaintiff posed an immediate

threat to the college and determined that Plaintiff's behavior warranted dismissal without a

formal disciplinary hearing. Id. ¶ 60. When Plaintiff arrived on campus on April 4, 2014,

Campus Security gave him a letter of dismissal. Id. ¶ 61.

### B. Procedural History

In Plaintiff's original Complaint, he sought to be reinstated to Utica College, admission to

the Utica College nursing program, compensatory and punitive damages, and injunctive relief

preventing Utica College from engaging in further discriminatory conduct. Compl. at 10. On

April 24, 2014, Plaintiff filed an Amended Motion for Preliminary Injunction. Dkt. No. 6. On

May 14, 2014, the Court adopted U.S. Magistrate Judge Thérèse Wiley Dancks's Report-

Recommendation in full, dismissing Plaintiff's claim for retaliation in violation of 29 U.S.C.

§ 794(a)(2) against all individual defendants without leave to amend, leaving Utica College as

the only defendant. Dkt. Nos. 7 ("Report-Recommendation"), 9 ("May Order"). Additionally, the

May Order dismissed Plaintiff's claims for intentional and negligent infliction of emotional

distress against all defendants but with leave to amend. On January 27, 2015, Plaintiff's Motion

for Preliminary Injunction was denied by the Court. Dkt. No. 57.

Plaintiff submitted a stipulation to amend his Complaint on February 27, 2015, which the

Court accepted for filing on March 2, 2015, making Plaintiff's Amended Complaint the operative

complaint. Am. Compl.; Mar. Order. Defendant Utica College filed the instant Motion for

Summary Judgment on February 29, 2016. Mot.

## III.    LEGAL STANDARD

"Summary judgment is appropriate only if there exists 'no genuine issue of material fact

and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.'"

Lomotey v. Conn.-DOT, 355 F. App'x 478, 480 (2d Cir. 2009) (summary order) (quoting

D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)); see also Fed. R. Civ. P. 56(a).

"Initially, the burden is on the moving party to demonstrate the absence of a genuine issue of

material fact." Sharpe v. Utica Mut. Ins. Co., 756 F. Supp. 2d 230, 238 (N.D.N.Y. 2010) (citing

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The Court will make all reasonable

inferences in favor of the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). "The

non-moving party 'may not rely on merely conclusory allegations or speculation, but instead

must offer some hard evidence showing that its version of the events is not wholly fanciful.'"

Gentile v. Potter, 509 F. Supp. 2d 221, 230 (E.D.N.Y. 2007) (quoting D'Amico, 132 F.3d at

149); see also Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (explaining that a

plaintiff "must provide more than conclusory allegations of discrimination to defeat a motion for

summary judgment").

## IV.    DISCUSSION

Plaintiff's current claims against Defendant include: (1) failure to engage in the

interactive process in violation of 29 U.S.C. § 794(a), (2) failure to accommodate in violation of

29 U.S.C. § 794(a), (3) retaliation in violation of 29 U.S.C. § 794(a)(2), (4) disparate treatment

discrimination, and (5) negligence.

The Rehabilitation Act states that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).[2] In a suit under the Rehabilitation Act, the plaintiff "bears the initial burden of establishing a *prima facie* case under the Act." Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 722 (2d Cir. 1994). The burden then shifts to the defendant to assert a "legitimate non-discriminatory reason" for its decision. Id. (quoting Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224–25 (2d Cir. 1994)); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973). "The burden then shifts back to the plaintiff to show that the [defendant's] stated reason is really a pretext for discrimination." Heilweil, 32 F.3d at 722.

Under the Rehabilitation Act, in order to establish a prima facie case, "a plaintiff must prove: (1) he is 'a handicapped person' under the Rehabilitation Act; (2) he is 'otherwise qualified' for the program; (3) he is excluded from benefits solely because of his handicap; and (4) the program . . . receives federal funding." Mrs. C. v. Wheaton, 916 F.2d 69, 74 (2d Cir. 1990) (quoting Joyner ex rel. Lowry v. Dumpson, 712 F.2d 770, 774 (2d Cir. 1983)); accord Heilweil, 32 F.3d at 722. When a case is grounded in the Rehabilitation Act, as is the present case, "the plaintiff must show that he is 'disabled' within the meaning of the Act as part of his *prima facie* case before intent or state of mind may be considered." Gentile, 509 F. Supp. 2d at

---

[2] Under 29 U.S.C. § 794(a), a "qualified individual with a disability" could be a student at a university receiving federal financial assistance, or an employee.

231. "Therefore, if a plaintiff fails to prove that he is disabled under the Rehabilitation Act, the Court 'must grant summary judgment for the defendant, without considering whether there are factual questions as to discrimination or pretext.'" Id. (quoting Batac v. Pavarini Constr. Co., No. 03-CV-9783, 2005 WL 2838600, at *3 (S.D.N.Y. Oct. 27, 2005)).

Courts have treated the requirements for prima facie claims under the Rehabilitation Act and the Americans with Disabilities Act identically. Harrington v. Vadlamudi, No. 13-CV-795, 2015 WL 4460994, at *2 (N.D.N.Y. 2015). "[T]he Second Circuit has held that the Rehabilitation Act and the ADA impose identical requirements." Gentile, 509 F. Supp. 2d at 231 n.5; see also Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 85 (2d Cir. 2004) ("Since the standards adopted by Titles II and III of the ADA are the same as those required under the Rehabilitation Act . . . we consider the merits of these claims together.").

### A.  Factual Record on Summary Judgment

"Rule 56(e) states that 'an adverse party may not rest upon the mere allegations or denials of [their] pleading, but [their] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.'" Canada v. Blain's Helicopter, Inc., 831 F.2d 920, 923 (9th Cir. 1987) (quoting Fed. R. Civ. P. 56(e)). "It is well settled that unauthenticated documents cannot be considered on a motion for summary judgment." Id. at 925. Documents permitted for consideration by the Court on a motion for summary judgment "must be authenticated by and attached to an affiant that meets the requirements of [Rule] 56(e) and the affidavit must be a person through whom the exhibits could be admitted into evidence.'" Id. (quoting 10A Charles Alan Wright et al., Federal Practice and Procedure § 2722 (2d ed. 1983)). Plaintiff requests that, in support of his Opposition, the Court

take into account Plaintiff's Reply Memorandum in support of his Motion for Preliminary Injunction. Opp'n at 1; see also Dkt. No. 31 ("Reply Memorandum").[3] However, Plaintiff's Reply Memorandum is not authenticated because it does not meet the requirements of Federal Rule of Civil Procedure 56(e), as Plaintiff did not attest "under penalty of perjury that [his] statements . . . were true to the best of his knowledge." Colon v. Coughlin, 58 F.3d 865, 872 (S.D.N.Y. 1995); see Canada v. Blain's Helicopter, Inc., 831 F.2d 920, 925 (9th Cir. 1987); Rogers v. Ford Motor Co., 952 F. Supp. 606, 611 (N.D. Ind. 1997) (holding that because the documents attached to the plaintiff's response had not "been authenticated by affidavit or otherwise verified," defendant's motion to strike was granted). The Second Circuit has held that Federal Rule of Civil Procedure 56 "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." Amnesty Am. v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002). According to the Supreme Court in Celotex Corp. v. Catrett, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" 477 U.S. at 324. The Court therefore will not consider Plaintiff's Reply Memorandum as a whole as Plaintiff requests.

## B. Failure to Accommodate

Under the Rehabilitation Act, an "individual with a disability" is defined as a person who "(i) has a physical or mental impairment which for such individual constitutes or results in a substantial impediment to employment; and (ii) can benefit in terms of an employment outcome

---

[3] The Court will consider citations to Plaintiff's Reply Declaration because it is signed under penalty of perjury. Dkt. No. 31-1 ("Reply Declaration").

from vocational rehabilitation services provided pursuant to subchapter I, III, or VI of this chapter." 29 U.S.C. § 705(20)(A). "According to definitions supplied by the Act, the major life activities that fall within the ambit of the Rehabilitation Act are 'caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" Gentile, 509 F. Supp. 2d at 236 (quoting 45 C.F.R. § 84.3(j)(2)(ii)). Under the Act, a person is "regarded" as having an impairment if he:

> (1) [h]as a physical or mental impairment that does not substantially limit major life activities but is treated by [an employer] as constituting such limitation; (2) [h]as a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) [h]as none of the impairments . . . but is treated by [an employer] as having a substantially limiting impairment.

Id. at 237 (citing 29 C.F.R. § 1630.2(*l*)) (alterations in original).

Plaintiff provides a statement from the VA in support of his disability. Opp'n at 20. Plaintiff also declares that "[w]hile attending Utica College, Utica College regarded me as a qualified person with a disability under the Federal Rehabilitation Act." Opp'n at 15. The burden is on the Plaintiff to demonstrate "that his disability fits into the narrow definition envisioned by the Rehabilitation Act." Gentile, 509 F. Supp. 2d at 235–36. "The impairment must '*substantially*' limit one of the major life activities such that the 'impairment must be significant, and not merely trivial.'" Id. at 236 (quoting Reeves v. Johnson Controls World Servs., 140 F.3d 144, 151 (2d Cir. 1998)). "Because the Rehabilitation Act regulations provide no guidance, courts look to the EEOC's regulations implementing the ADA to determine whether an activity is substantially limited." Trobia v. Henderson, 315 F. Supp. 2d 322, 328 (W.D.N.Y. 2004). In "determining whether an impairment meets the definition of a 'disability' under . . . the

Rehabilitation Act," a court must first "determine whether plaintiff has a physical impairment." Id. at 326. Next the court "must identify the 'life activity' involved and determine whether it constitutes a 'major life activity' as defined by the Act." Id. at 326–27 (quoting Bragdon v. Abbott, 523 U.S. 624, 637 (1998)). Finally, the Court must determine "whether the impairment substantially limited the major life activity." Id. at 326–27 (quoting Bragdon, 523 U.S. at 639).

Plaintiff claims that his RSD, a shoulder condition that allegedly causes him much pain, and other disabilities diagnosed by the VA impair his "major life activities of working, sleeping, and caring for oneself." Opp'n at 15. Utica College alleges that Plaintiff's RSD, the disability at the center of this case, does not qualify as a impairment that "substantially limits" a major life activity. See Trobia, 315 F. Supp. 2d at 327–28 ("[E]very impairment effects a major life activity to some degree, but the statute is implicated only if the impairment substantially limits such activity."). To survive a motion for summary judgment "on the issue of whether a plaintiff's condition substantially limits" a major life activity, "a plaintiff 'must not only (1) describe how those life activities are limited, but must also (2) support this description with competent medical evidence.'" Croons v. N.Y. State Office of Mental Health, 18 F. Supp. 3d. 193, 211 (N.D.N.Y. 2014) (quoting Villanti v. Cold Spring Harbor Cent. Sch. Dist., 733 F. Supp. 2d 371, 380 (E.D.N.Y. 2010)). Plaintiff, however, has not submitted any medical evidence establishing that his physical impairments substantially limit him in a major life activity. "A VA disability rating, based on quantifying a decrease in a veteran's earning capacity, has been recognized as a completely different standard than that imposed by the ADA, and the two are not interchangeable." Shepherd v. Buffalo Psychiatric Ctr., No, 2009 WL 5042629, at *3 (W.D.N.Y. Dec. 15, 2009). Plaintiff's submission of an evaluation done by the VA, which diagnosed him

with RSD at a 10% disability rating, is therefore insufficient to establish that there is a genuine issue of material fact in regard to his disability status. See DiCarlo v. Potter, 358 F.3d 408, 418 (6th Cir. 2004) (holding that plaintiff's submission of an evaluation of a 20% leg disability, by itself, was "insufficient to demonstrate that [plaintiff] is substantially limited in a major life activity"), overruled on other grounds by Gross v. FBL Fin. Servs., Inc., 577 U.S. 167, 180 (2009).

In his Opposition, Plaintiff attaches a letter from Adam Karwatowicz, M.D., of the Monterey Veteran Affairs Clinic, to the VA in support of Plaintiff's disability. Opp'n at 22. This letter states that Plaintiff "is an individual with a severe psychological disability." Id. However, Plaintiff's stated cause of action is Defendant's failure to accommodate Plaintiff after he demanded an extension for a psychology paper due to his absence as a result of his shoulder condition. Am. Compl. ¶¶ 8–10. Plaintiff never provided documentation to Utica College regarding his psychological disability, nor did he allege in his lawsuit that the College failed to accommodate this severe psychological disability. Dkt. No. 97-3 ("Henkel Declaration") at 52–55. Plaintiff must have demonstrated that the condition for which he sought accommodation from the College is a disability under the Rehabilitation Act. See Felix v. N.Y.C. Transit Auth., 324 F.3d 102, 104 (2d Cir. 2003) (holding that there must be a "causal connection between the major life activity impaired and the accommodation requested"). Plaintiff here has failed to meet this burden.

Plaintiff additionally claims that the College regarded him as disabled when they provided him classroom accommodations and that, because of this, the College cannot now say that he is not disabled. Opp'n at 3. To meet the "regarded as disabled" criteria, Plaintiff must

prove that Utica College mistakenly believed that his disability was substantially limiting or that the College believed that his nonlimiting impairment was substantally limiting. See Betts v. Rector & Visitors of the Univ. of Va., 18 F. App'x 114, 118 (4th Cir. 2001); see also Spychalsky v. Sullivan, No. 01-CV-958, 2003 WL 22071602, at *9 (E.D.N.Y. 2003) (holding that plaintiff, a student, was required to show that his law school "regarded" him as disabled to withstand the summary judgment motion); Giordano v. City of N.Y., 274 F.3d 740, 748 (2d Cir. 2001) (Under the "regarded as disabled" category, "the decisive issue is the employer's perception of his or her employee's alleged impairment"). However, Plaintiff's argument is not sufficient in alleging a factual dispute as to whether he was regarded as disabled. Plaintiff claims that while in attendance at Utica College, he was "treated as a disabled person and was provided accommodation for his disabilities." Opp'n at 3. "An employer's belief that an employee is unable to perform one task with an adequate safety margin does not establish per se that the employer regards the employee as having a substantial limitation on his ability to work in general." Redlich v. Albany Law Sch. of Union Univ., 899 F. Supp. 100, 107 (N.D.N.Y. 1995). Additionally, "[m]ere knowledge is insufficient to prove 'either that the employer regarded the employee as disabled or that the perception caused the adverse employment action.'" Gentile, 509 F. Supp. 2d at 238 (quoting Reeves, 140 F.3d at 153). Plaintiff does not provide specific facts to show that there is a genuine issue for trial as to whether Defendant regarded Plaintiff as disabled.

Even if Plaintiff established a dispute as to whether he was disabled or regarded as disabled within the meaning of the Rehabilitation Act, Plaintiff has not established a genuine dispute of fact as to whether reasonable accommodations were granted. "[T]he ADA imposes no

liability for an employer's failure to explore alternative accommodations when the accommodations provided to the employee were plainly reasonable." Noll v. Int'l Bus. Machines Corp., 787 F.3d 89, 98 (2d Cir. 2015). Krieger exempted Plaintiff from "being tested on a third of the course material, an accommodation that was completely unwarranted and that fundamentally altered the course expectations." Krieger Decl. ¶ 14. After Plaintiff was banned from attending Krieger's class, Plaintiff was provided audio tapes of the class so that he could finish the remainder of the semester. Id. ¶ 22. Plaintiff does not provide any support for his contention that he did not receive reasonable and appropriate accommodation from Defendant. See Trobia, 315 F. Supp. 2d at 332 ("The accommodations may not have been to plaintiff's liking, but they were not inconsistent with his needs and limitations . . . ."). Therefore, because there is not a genuine dispute of material fact, summary judgment is appropriate and Defendant's Motion in regard to Plaintiff's claim for failure to accommodate in violation of 29 U.S.C. § 794(a) is granted.

**C. Failure to Engage in the Interactive Process**

Plaintiff claims that the College failed to engage in the interactive process "by allowing . . . Krieger and not the Disability Services Officer make a decision about Silman's accomodation request." Am. Compl. ¶ 47. "To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation." 29 C.F.R. § 1603.2(o)(3). The interactive process was envisioned to be a process where "employers and employees work together to assess whether an employee's disability can be reasonably accommodated." Noll, 787 F.3d at 98 (quoting Jackan v. N.Y. State Dep't of Labor, 205 F.3d

562, 566 (2d Cir. 2000)). The interactive process "should identify the precise limitation resulting

from the disability and potential reasonable accommodations that could overcome those

limitations." 29 C.F.R. § 1603.2(o)(3). "[T]he interactive process is not required when the end it

is designed to serve—reasonable accommodation—has already been achieved." Noll, 787 F.3d at

98. Under the Rehabilitation Act, schools must offer "reasonable accommodations to ensure

meaningful access," but the Act does "not require that substantial changes be made to the

program itself." French v. N.Y. State of Dep't of Educ., No. 04-CV-434, 2010 WL 3909163, at

*12 (N.D.N.Y. Sept. 30, 2010); see also Brief v. Albert Einstein Coll. of Med., 423 F. App'x 88,

90–91 (2d Cir. 2011) (holding that the College of Medicine must provide reasonable

accommodations to individuals with disability, but that it was not required to make fundamental

or substantial modifications to their program to accommodate a disabled student). "Employers

are not required to provide a perfect accommodation or the very accommodation most strongly

preferred by the employee." Id. at 95. Additionally, "the employer is entitled to summary

judgment if, on the undisputed record, the existing accommodation is 'plainly reasonable.'" Id. at

94 (citing Wernick v. Fed. Reserve Bank of N.Y., 91 F.3d 379, 385 (2d Cir. 1996)).

Here, even if, as the College claims, Plaintiff was not technically qualified for an

accommodation, the College did still provide the Plaintiff with accommodations, and in the end,

all of the students in Krieger's psychology class received an extension on the paper. While

Plaintiff had originally demanded a five-day extension, the fact that he received only a four-day

extension is not a material difference. See Noll, 787 F.3d at 98 (holding that because the

defendant provided plaintiff with American Sign Language interpreters, which was a reasonable

accommodation, "any failure to engage in an interactive process—even if supported by the

record—did not give rise to a discrimination claim"); see also Se. Cmty. Coll. v. Davis, 442 U.S. 397, 413 (1979) (explaining that reasonable accommodations do not require an "educational institution to lower or to effect substantial modification of standards to accommodate a handicapped person"); Garcia v. State Univ. of N.Y. Health Scis. Ctr. at Brooklyn, No. CV-97-4189, 2000 WL 1469551, at *8 (E.D.N.Y. Aug. 21, 2000). Plaintiff provided no "specific facts showing that there is a genuine issue for trial" in regard to whether the accommodations provided were reasonable; it is not sufficient for Plaintiff to say that "he did not receive appropriate accommodation from Defendant." Opp'n at 5; Celotex, 477 U.S. at 324.

Furthermore, "[w]hen judges are asked to review the substance of a genuinely academic decision . . . they should show great respect for the faculty's professional judgment." Regents of the Univ. of Mich. v. Ewing, 474 U.S. 214, 225 (1982). A judge shall not "override [an academic decision] unless it is such a substantial departure from accepted academic norms as to demonstrate that the person . . . responsible did not actually exercise professional judgment." Id. "[C]ourts regularly apply the academic deference rule to challenges arising under the ADA and Rehabilitation Act." Garcia, 2000 WL 1469551, at *9. Plaintiff claims "[w]hether or not Tyson Krieger['s] decision is entitled to deference is [a] matter that can only be determined by a jury." Opp'n at 5. However, the Court finds that Plaintiff has not raised any facts that demonstrate that Dr. Krieger's decision to not extend the paper's deadline for the requested five days was "a substantial departure from accepted academic norms." See Ewing, 464 U.S. at 225. Therefore, there is no issue of fact for a jury to decide. As a reasonable accommodation had been achieved, the interactive process was not required. See Noll, 787 F.3d at 98. Therefore, Defendant's

Motion regarding Plaintiff's claim for failure to engage in the interactive process in violation of 29 U.S.C. § 794(a) is granted.

### D. Plaintiff's Disability Discrimination Claims

Plaintiff alleges two similar disparate treatment discrimination claims, alleging that "Defendant, Krieger, and [Johnsen]'s actions, as well as Defendant agents and employees, show a discriminatory animus against Plaintiff for being a disabled person," and that "Defendant used a non-discriminatory student disciplinary process to treat Plaintiff in a discriminatory manner." Am. Compl. at 23.

In discrimination cases, a plaintiff "must show: (1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Holcomb v. Iona College, 521 F.3d 130, 138 (2d Cir. 2008). In disparate treatment cases, the merits of the dispute turn on the defendant's intent, and rarely is there direct evidence of such intent. Lomotey, 355 F. App'x at 480. Because of this, courts should pay "particular attention to circumstantial evidence." Id. However, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." Holcomb, 521 F.3d at 137. A plaintiff satisfies "[t]he burden of establishing a prima facie case of alleged disparate treatment [if he] introduces evidence that raises a reasonable inference that the action taken by the [defendant] was based on an impermissible factor." Id. at 138.

Here, Defendant's legitimate nondiscriminatory reason for dismissing Plaintiff from the College was that they believed he posed an immediate threat to campus safety. Hutton Decl. ¶ 16. Plaintiff provides no evidence of unlawful animus, and provides merely conclusory allegations

insufficient to defeat a motion for summary judgment. <u>See</u> Opp'n at 11–12; <u>see also</u> <u>Schwapp</u>, 118 F.3d at 110. To the extent that Plaintiff tries to rely on his Reply Memorandum, those allegations are also conclusory and therefore do not introduce evidence showing the existence of a genuine dispute of material fact.

Plaintiff claims that he will prevail under the "Cat's Paw" theory of discrimination. Opp'n at 8. Under that theory, a decisionmaker can be held liable for the animus of a nondecisionmaker "if the adverse action is the intended consequence of the [nondecisionmaker's] discriminatory conduct." <u>Staub v. Proctor Hosp.</u>, 131 S. Ct. 1186, 1192 (2013). Here, Plaintiff does not offer evidence that the actions of Krieger or Johnsen were motivated by discriminatory or retaliatory animus, "with the specific intent to cause" his dismissal, or that they were the proximate causes of his dismissal. <u>Wright v. City of Syracuse</u>, 611 F. App'x 8, 11 n.2 (2d Cir. 2015) (summary order). Plaintiff's legal theory is without factual support, and on the basis of the undisputed facts, Defendant is entitled to summary judgment.

Even if Plaintiff provided evidence establishing a dispute of fact as to intent, Plaintiff has not shown that similarly situated nondisabled students were treated differently. "[W]here the plaintiff fails to allege that disabled individuals are being treated differently from non-disabled individuals, he or she has not stated a claim" under the Rehabilitation Act. <u>Forziano v. Indep.</u> <u>Grp. Home Living Prgm.</u>, No. 13-CV-370, 2014 WL 1277912, at *9 (E.D.N.Y. March 26, 2014); <u>see also</u> <u>Patterson v. City Univ. of N.Y.</u>, No. 12-CV-6300, 2014 WL 3511048, at *5 (E.D.N.Y. July 14, 2014) ("[A] plaintiff must show that he was 'similarly situated in all material respects' to the individuals with whom he compares himself." (quoting <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 39 (2d. Cir. 2000)). Plaintiff must have shown that he "was subject to an

adverse . . . action 'and that a similarly situated [student] not in the relevant protected group received better treatment.'" <u>Carter v. New Venture Gear</u>, 310 F. App'x 454, 457 (2d Cir. 2009) (quoting <u>McGuinness v. Lincoln Hall</u>, 263 F.3d 49, 53 (2d Cir. 2001)). Plaintiff provides no evidence for his allegations regarding dissimilar treatment between disabled and nondisabled students. Opp'n at 9. For these reasons, Defendant's Motion for summary judgment in regard to Plaintiff's disparate treatment claims is granted.

### E.  Plaintiff's Retaliation Claim

Retaliation claims are analyzed under the same burden-shifting analysis as discrimination claims. <u>Croons</u>, 18 F. Supp. 3d at 207. This means that if a plaintiff meets his burden by establishing a prima facie case of retaliation, and then the defendant "points to evidence of a legitimate, nonretaliatory reason for the challenged [discrimination], the plaintiff must offer evidence sufficient to permit a rational factfinder to conclude that the [defendant's] explanation is merely a pretext for impermissible retaliation." <u>Lomotey</u>, 355 F. App'x at 482. "To state a claim for retaliation, a plaintiff must establish a *prima facie* case consisting of the following four elements: '(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action.'" <u>Gentile</u>, 509 F. Supp. 2d at 238 (quoting <u>Weixel v. Bd. of Educ.</u>, 287 F.3d 138, 148 (2d Cir. 2002)); <u>accord</u> <u>Lomotey</u>, 355 F. App'x at 481–82. "A plaintiff may prove that retaliation was a but-for cause of an adverse . . . action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the [defendant's] proffered legitimate,

nonretaliatory reasons for its action." <u>Zann Kwan v. Andalex Grp. LLC</u>, 737 F.3d 834, 846 (2d Cir. 2013).

Plaintiff alleges that he was retaliated against in violation of 29 U.S.C. § 794(a)(2) after bringing a claim of discrimination with the OCR and threatening further legal action. Am. Compl. ¶ 53. Plaintiff claims that the McDonnell Douglas burden shifting requirement does not apply in a motion for summary judgment. Plaintiff is incorrect in this allegation, as the McDonnell Douglas burden-shifting requirement does apply here. <u>See</u> <u>Kwan</u>, 737 F.3d at 843; <u>accord</u> <u>Croons</u>, 18 F. Supp. 3d at 207.

Here, Dean Johnsen offered a legitimate, nonretaliatory reason for his denial of Plaintiff's request to retake Krieger's psychology class, namely to avoid conflict between Krieger and Plaintiff. Johnsen Decl. ¶¶ 8, 10. Defendant also provided a legitimate, nonretaliatory reason for dismissing Plaintiff from the College, namely a belief that Plaintiff posed a threat to campus. Hutton Decl. at 6; <u>see also</u> <u>Rodriguez v. City of New York</u>, 644 F. Supp. 2d 168, 187 (E.D.N.Y. 2008) ("[T]he fact that an employee disagrees with an employer's decision regarding termination, or even has evidence that the decision was objectively incorrect or was based on a faulty investigation, does not automatically demonstrate, by itself, that the employer's proffered reasons are a pretext for termination."). Defendant's explanation for dismissing Plaintiff has stayed consistent. <u>See</u> <u>Kwan</u>, 737 F.3d at 847 ("[Defendant's] "inconsistent explanations for [plaintiff's] termination . . . are sufficient to create a triable issue of fact whether [her complaint] was a but-for cause of her termination").

Plaintiff has not offered "concrete particulars" to support his argument that Defendant retaliated against him. Opp'n at 10–11. Plaintiff has also failed to produce adequate evidence of

pretext. "To establish pretext, a plaintiff must produce sufficient evidence to cast doubt on defendant's legitimate, non-retaliatory reasons, and show that the employment decision 'was more likely than not motivated, in whole or in part,' by unlawful reasons." <u>Sharpe</u>, 756 F. Supp. 2d at 249 (quoting <u>Amin v. Akzo Nobel Chems., Inc.</u>, 282 F. App'x 958, 962 (2d Cir. 2008) (summary order)). Plaintiff's "allegations are conclusory and unsupported by evidence of any weight." <u>Sharpe</u>, 756 F. Supp. 2d at 249 (quoting <u>Smith v. Am. Exp. Co.</u>, 853 F.2d 151, 155 (2d Cir. 1988)). Therefore, Plaintiff's allegations are insufficient to create a triable issue of fact as to whether there was retaliation.

Plaintiff references his Reply Memorandum as evidence that the nondiscriminatory reasons Defendant offered are pretexual. However, as stated above, because Plaintiff's Reply Memorandum is unauthenticated, it cannot be considered by the Court in deciding Defendant's Motion. Furthermore, to the extent that Plaintiff's Reply Memorandum alleges pretext, its assertions are also conclusory and do not refute Defendant's evidence showing that their dismissal of Plaintiff from Utica College was not motivated by a legitimate, nondiscriminatory reason. <u>See</u> <u>Gentile</u>, 509 F. Supp. 2d at 231 ("The Rehabilitation Act 'does not erect an impenetrable barrier around the disabled employee preventing the employer from taking any employment actions vis-a[-]vis the employee.'" (quoting <u>Arnold v. City of Appleton</u>, 97 F. Supp. 2d 937, 943 (E.D. Wis. 2000))). Therefore, Defendant's Motion for summary judgment regarding Plaintiff's retaliation claim is granted.

### F. Plaintiff's Negligence Claim

Plaintiff claims that Defendant breached their duty of reasonable care owed to Plaintiff. Am. Compl. ¶¶ 67-69. "In order to succeed on a negligence claim, the plaintiff must establish the

existence of a legal duty, a breach of that duty, proximate causation, and damages." Faiaz v.

Colgate Univ., 64 F. Supp. 3d 336, 361 (N.D.N.Y. 2014); accord King v. Crossland Sav. Bank,

111 F.3d 251, 255 (2d Cir. 2013); Stagl v. Delta Airlines, Inc., 52 F.3d 463, 467 (2d Cir. 1995).

"The existence of such a duty is a question of law for the court." Faiaz, 64 F. Supp. 3d at 361;

accord Eiseman v. State of New York, 511 N.E.2d 1128, 1136 (N.Y. 1987); Darby v. Compagnie

National Air France, 753 N.E.2d 160, 162 (N.Y. 2001). Here, Plaintiff has failed to allege facts

showing that the Defendant owed Plaintiff a duty of care. The Second Circuit has held that a

college does not have a duty of reasonable care in their response to a student's misconduct. Id. at

362 (rejecting the plaintiff's claim "that because the University 'controlled' the disciplinary

process, a duty was created"). As a result, Plaintiff has failed in his assertion that there is a

genuine dispute of material fact on this issue, and Plaintiff's negligence claim is therefore

insufficient. Therefore, Defendant's Motion for Summary Judgment in regards to Plaintiff's

negligence claim is granted.

**5.    CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion for Summary Judgment (Dkt. No. 97) is

**GRANTED**; and it is further

**ORDERED**, that Plaintiff's Amended Complaint (Dkt. No. 65-1) is **DISMISSED**; and it

is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision

Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


DATED:      August 12, 2016
              Albany, New York


Lawrence E. Kahn
U.S. District Judge